UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| DORENDA TURNER | : | DOCKET NO. 03-1123 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| CALCASIEU PARISH SCHOOL BOARD, ET AL. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is defendants' Motion for Summary Judgment [doc. # 16].[1]

On June 12, 2003, Dorenda Turner filed the above-captioned suit against the Calcasieu Parish School Board; Jude Theriot, individually, and in his capacity as Superintendent of the Calcasieu Parish School Board; and Wayne Savoy, individually, and in his capacity as Assistant Superintendent of the Calcasieu Parish School Board. (Complaint, ¶ 4). Plaintiff's suit seeks recovery for: 1) unlawful retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5; and 2) intentional infliction of emotional distress under Louisiana tort law. (Complaint, ¶¶ 2, 9-10).[2]

On May 9, 2006, defendants filed the instant motion for summary judgment seeking dismissal of plaintiff's case. Following a delay for briefing, the matter is now before the court.

---

[1] The above-captioned matter has been referred to the undersigned for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c).

[2] Plaintiff's suit also refers to the Equal Pay Act. (*See*, Complaint, ¶ 12). However, since the suit was filed, there is no indication that plaintiff has advanced this claim. Accordingly, it is deemed abandoned.

Summary Judgment Principles

Summary judgment is proper if the movant demonstrates that "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790 (5th Cir. 1992). "In order to defeat a properly supported motion for summary judgment, the nonmoving party must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a "fair-minded jury" that it is entitled to a verdict in its favor." *Conticommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995)(citing, *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir. 1991)).

In response to a properly supported motion for summary judgment, the non-movant, may not rest upon the mere allegations or denials contained in her pleadings, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the nonmovant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the nonmovant. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

Discussion

During all relevant periods, Dorenda Turner was an employee of the Calcasieu Parish School Board. In 1994 and 1999, Turner filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination and retaliation. (*See*, 9/25/2000 Consent Decree; Def. Exh. 1). She subsequently filed suit in federal court, and on September 25, 2000, a consent decree was entered. *Id*.

On October 28, 2001, Turner filed another charge with the EEOC challenging the relocation of the "P.M. School" and her characterization as a "pit bull dog" by the school board administration. (*See*, EEOC Charge No. 270-A2-00246; Def. Exh. 1D). On June 13, 2002, the EEOC issued a Dismissal and Notice of Rights to sue letter. (Def. Exh. 1D).

On November 11, 2002, Turner filed an EEOC charge alleging gender discrimination and unlawful retaliation because she was "denied" promotion to the position of Director of Child Welfare and Attendance. (*See*, EEOC Charge No. 270-A3-00290; Def. Exh. 1E).[3] She further alleged that a male director had been allowed to hold two jobs simultaneously, and that the rules had not been changed for other director positions. *Id*. On March 19, 2003, the EEOC issued its Dismissal and Notice of Rights to sue letter. (Def. Exh. 1F). Turner filed the instant suit less than three months later.

In her complaint, Turner alleges that defendants retaliated against her as follows: 1) by forcing her to move an entire school program without any assistance; 2) by calling her a "Pit Bull" in front of her colleagues and friends; 3) by advertising a position, and then changing the requirements once it became apparent that Turner was the most qualified applicant; and 4) by subjecting her to verbal and physical intimidation, humiliation, worry and inconvenience in front of others. (Complaint, ¶ 9).[4]

The first two actions set forth above were substantially included in plaintiff's October 28, 2001, EEOC charge. (Def. Exh. 1D). The ensuing Dismissal and Notice of Rights to sue letter

---

[3] Turner stated that she was told that she would be promoted only if she gave up her second job. *Id*.

[4] In her EEOC charge, plaintiff alleged that she was subjected to discrimination because the prior director (who was male) was permitted to hold two jobs. (*See*, Def. Exh. 1E). However, these allegations were not included in the instant complaint. Moreover, the prior director is not similarly situated because he did not hold two supervisory positions.

3

was issued on June 13, 2002. *Id*. Turner is presumed to have received the right-to-sue letter within seven days after it was issued. *See, Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379-380 (5th Cir. 2002).[5] Of course, a civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC. *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)(citing, 42 U.S.C. § 2000e-5(f)). However, the instant suit was not filed until over eleven months after receipt of the letter. Accordingly, any retaliation claims premised upon the actions covered in the October 28, 2001, EEOC charge are untimely. *See, Berry, supra.*

Plaintiff next contends that she was subjected to retaliation because the requirements for the position of Director of Child Welfare and Attendance were changed so that she could not accept that position and also retain her position as principal of the "P.M. School."[6] In a Title VII retaliation case, we apply the *McDonnell Douglas* burden-shifting framework. *See, Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). In other words, plaintiff must first make a prima facie showing: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Rios, supra.* Finally, if defendant meets its burden of production, the plaintiff must then "adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext

---

[5] Plaintiff does not challenge the presumption that she received the right-to-sue letter by the end of June 2002.

[6] This challenged action was timely raised here. (*See*, EEOC Charge No. 270-A3-00290; Def. Exh. 1).

4

for retaliation." *Id*. (quoted source omitted).[7]

Defendants do not contest that plaintiff has engaged in activity protected by Title VII. Accordingly, we turn to the second element of plaintiff's prima facie case. We note that the Supreme Court has recently held that Title VII's anti-retaliation provision applies only to "employer actions that would have been materially adverse to a reasonable employee or applicant." *Burlington Northern & Santa Fe Railway Co. v. White*, *supra*. That is, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*.

Turner alleges that defendants thwarted her from simultaneously holding two jobs as principal of the PM School and as Director of Child Welfare and Attendance ("Director position").[8] Turner admits that prior to the opening of the Director position, she was employed in the Child Welfare and Attendance Department in addition to her position as principal. (Turner Affidavit, Pl. Exh.). Thus, there is no evidence that defendants prevented her from holding two jobs. Stated another way, plaintiff's only supported allegation is that defendants prevented her from simultaneously filling two leadership positions. However, there is no evidence that other employees were permitted to hold two or more leadership positions. Accordingly, a reasonable worker could not have harbored a legitimate expectation of simultaneously holding two supervisory positions and would not have been chilled from exercising protected rights under

---

[7] The *McDonnell Douglas* burden shifting framework still applies to retaliation claims after the recent Supreme Court decision in *Burlington Northern & Santa Fe Railway Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405 (2006). *See e.g., Kebiro v. Walmart*, 2006 WL 2336438 (5th Cir. 8/10/2006).

[8] However, there are no allegations or evidence that defendants would not have hired Turner for the Director position if she had relinquished her PM School principal job. (*See*, Miller & Savoy Affidavits; Def. Exhs.).

5

Title VII.[9]

We further find that plaintiff has not established a that a genuine issue exists as to a causal link between the protected activity and the alleged adverse action. Defendants have adduced uncontradicted evidence that the decision to restrict the new Director from holding other positions was made prior to advertising the vacancy. (Savoy Affidavit; Def. Exh.). There is also no evidence that defendants knew that plaintiff was likely to apply for the Director position. Moreover, the moonlighting prohibition was promulgated to all five applicants for the new Director position. (Miller Affidavit; Def. Exh.).

Even if plaintiff were able to establish a prima facie case of unlawful retaliation, defendants have offered a legitimate non-discriminatory reason for its decision to limit the new Director from holding multiple positions. The decision stemmed from the fact that the prior director also held a job as teacher at the P.M. School. (Savoy Affidavit). By limiting the new Director's other employment opportunities, the defendants "intended to promote more aggressive enforcement of the School Board's policies, to change the direction of that department, and to better provide for availability of the Director at School Board meetings and committee meetings, many of which are held in late afternoon and evening hours." (Savoy Affidavit, Def. Exh. 1). In response, plaintiff has not adduced any evidence that would permit a reasonable trier of fact[10] to

---

[9] In her affidavit, Turner alleges that she was reprimanded for having sought the assistance of the police department to ensure the removal of an untagged car from the handicapped parking area. (Turner Affidavit). However, her affidavit indicates that this event was related to her forced relocation of the P.M. school which we have already recognized as untimely. *Id.*, *see* discussion, *supra*.

[10] In this bench trial case, the trier of fact is the undersigned.

conclude that the proffered reason was a pretext for unlawful retaliation. *Banks, supra*.[11]

To the extent that plaintiff seeks recovery under Title VII against her supervisors, Wayne Savoy and Jude Theriot, we observe that the Fifth Circuit has held that there is no individual liability for employees under Title VII. *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 -449 (5th Cir. 2002)(citations omitted). Moreover, when as here, a plaintiff has sued her employer, she cannot also maintain a suit against the employer's agents in their official capacities. *Id*.

Plaintiff's remaining claim is for the intentional infliction of emotional distress under state law. La. Civil Code Art. 2315. In 1991, the Louisiana Supreme Court recognized the tort of intentional infliction of emotional distress. *White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991). The elements of an intentional infliction of emotional distress claim are that: (1) the defendant acted in an extreme or outrageous manner;[12] (2) the plaintiff suffered severe emotional

---

[11] In support of her retaliation claim, plaintiff also alleged that defendants subjected her to verbal and physical intimidation, humiliation, worry and inconvenience in front of others. (Complaint, ¶ 9). However, she has adduced no evidence of same during the relevant period.

[12] In defining conduct which is prohibited by this tort, the Supreme Court stated,
> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . .
>
> The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

distress; and (3) that the defendant either desired to inflict severe emotional distress, or knew that severe emotional distress was certain or substantially certain to occur from his conduct. *Id*.

Once a movant has submitted evidence or pointed to an absence of evidence as to a matter that the non-movant would bear the burden of proof at trial, the onus shifts to the non-movant to demonstrate by competent summary judgment proof that there is an issue of material fact warranting trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995).

In response to defendant's showing, plaintiff has not adduced competent summary judgment evidence tending to establish any of the foregoing elements of her tort claim. Moreover, "we do not in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89 (5th Cir. 1995).

In sum, we find that there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law dismissing plaintiff's claims in their entirety. Defendants' motion for summary judgment [doc. # 16] is GRANTED. Fed.R.Civ.P. 56.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on September 14, 2006.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

> Restatement, *supra*, comment f, § 46. It follows that unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.

*White*, 585 So.2d at 1209, (citations omitted).